**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

EUGENE SCALIA,                          :
SECRETARY OF LABOR,
U.S. DEPARTMENT OF LABOR,               :
                                        :
                Plaintiff,              :
                                        :  Civil Action No.: 8:19-cv-00934-TDC
v.                                      :
                                        :
SOFIA & GICELLE, INC., et al.,          :
                                        :
                Defendants.             :
_____

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Sofia & Gicelle, Inc. and Maria Aguilar (Defendants), through undersigned counsel, and pursuant to Rule 56, Fed.R.Civ.P, hereby oppose Plaintiff's Motion for Summary Judgment (Motion).  As set forth below, the Motion must be denied because genuine issues of material fact exist.

### I.    Introduction

Plaintiff's Motion must be denied because Plaintiff's Fair Labor Standards Act (FLSA) claims rely on material facts which are in dispute, as detailed below.  These disputed material facts must be addressed at trial to resolve the key issues in this action, which include:

- Whether Defendants failed to correctly report the hours worked by their employees;

- Whether Defendants' tipped employees received sufficient tips to allow Defendants to claim tip credits for minimum wage computation purposes;

- Whether Defendants' non-tipped employees are owed minimum and overtime wages;

- Whether Defendants are subject to the commission exemption for their tipped employees' overtime pay claims under section 7(i) of the FLSA;

- Whether Defendants incurred in FLSA recordkeeping violations; and

- Whether Defendants' alleged FLSA violations were willful.

Defendants have cited sufficient material facts herein which establish the existence of genuine issues of material facts to require the dismissal of Plaintiff's Motion.

## II.   Factual Background

Defendants have operated a sports bar in Suitland, Maryland --Fast Eddies Sports & Billiards (Fast Eddies)-- since 2015. Defendant Sofia & Gicelle, Inc. (S&G) is the owner of the business, and Defendant Maria Aguilar (Aguilar) is the sole shareholder of S&G  Aguilar is a Spanish-speaking immigrant with a 9th grade education, who had previously worked for 16 years as a hotel housekeeper and waitress before opening the sports bar.  She learned about the minimum wage and overtime pay requirements during her previous employment experience. She also has solicited and received payroll advice and counsel from S&G's accountants, upon whom she has relied to insure S&G's employees' minimum and overtime wages are paid correctly as required by law.

Fast Eddies is open seven (7) days a week, operates two (2) separate daily shifts (daytime and nighttime), and regularly assigns its employees to one of these two daily shifts for not more than 4 or 5 days a week.  On Mondays, Tuesdays and Wednesdays, its slowest days, there is only one bartender per shift, and one daily cook (Roberto Reyes, the kitchen manager, who is Aguilar's husband).  The busiest days are Thursdays through Sundays, when several servers and

bartenders work each daily shift.  This shift scheduling practice rarely if ever yields a workweek exceeding 40 hours a week for each employee.  The average work week for each employee is 20 to 35 hours a week.

Fast Eddies employs servers, bartenders, cooks, busboys and dishwashers.  The servers and bartenders receive tips, allowing S&G to pay them a minimum base wage of $3.75 to $3.83 per hour (versus the standard federal minimum of $7.25 or local minimum of $11.50 or $12 per hour), with the tip credit making up the rest of the legal minimum wage, as allowed by the FLSA.  The non-tipped employees (cooks, busboys and dishwashers) are paid the full local minimum wage of between $11.50 to $12 an hour (in excess of the federal minimum wage).  The employees receive payroll checks every two weeks, covering their wages only, not their tips.

Tips (including cash and credit card tips) are computed by and paid daily in cash to the tipped employees.  The amount of tips earned weekly exceed the minimum tip amounts necessary to merit the FLSA tip credit.  In addition to tips, the tipped employees are paid a commission of $1 per drink and $20 per bottle sold to patrons.  These commissions are also computed by and paid in cash each day to the tipped employees.  The commissions paid to each tipped employee add up to several hundreds of dollars a week.

The daily practice of cashing out the tips is done at the request of the servers and bartenders, and the amount earned by each employee in daily tips is not reported to the accounting firm for payroll purposes.  The same is true of the commissions earned by the tipped employees: these commissions are computed by and allocated in cash at the end of each day to the tipped employees earning them, at their request, and are not reported to the accounting firm for payroll purposes.  The reason tips and commissions are not paid via payroll checks is because

the employees insist on receiving their tips and commissions on a daily basis, and to avoid payment of higher income taxes.

The payroll checks prepared by S&G's accounting firm only pay for wages, and do not include any payment for tips. The pay stubs list the required minimum total of tips necessary to meet the tip credit for minimum wage purposes, in reliance of Defendants' representation that a larger amount of tips have been paid to their tipped employees. The tipped employees have declared under oath that their tip income is well above the tip amounts listed in the payroll pay stubs. Defendants' accounting firm acknowledges it does not receive any tip and commission data from Defendants for payroll purposes, and that the minimum tip income reported in payroll records is calculated by the accounting firm and included for payroll compliance purposes under Maryland state law. The accountants are not responsible for verifying the employee hours reported by Defendants, nor the exact amount of tips received by the tipped employees, and have no knowledge of the commissions earned by each employee. Contrary to Plaintiff's assertion, the accountants have never "manipulated" any payroll data provided by Defendants.

The employees clock in and out each day on a computer monitor set up at the sports bar. The hours worked by each employee are reported as they appear on the monitor to the accounting firm's payroll department by phone, email, fax, text or photo data. In those instances where timesheets are missing, Defendants' witnesses can confirm that the hours reported are correct. Defendants' payroll records evidence the hours worked by each employee.

Plaintiff's claim that Defendants are liable for minimum wage and overtime back wages are incorrect and disputed by Defendants. Plaintiff wrongfully refuses to recognize Defendants' right to the FLSA tip credit, based solely on Defendants' failure to report the actual amount of tips received by the tipped employees for payroll purposes. Plaintiff's back wage computations

are therefore in error, due to Plaintiff's wrongful refusal to recognize Defendants' tip credit.
Likewise, Plaintiff also improperly refuses to recognize the liquor sales commissions received by
the tipped employees, thereby wrongfully denying Defendants' right to exempt these
commissioned employees from the overtime requirements of the FLSA, as allowed under
Section 7(i), FLSA.

As shown below in Part IV of this Opposition Memorandum, there is material
documentary and testimonial evidence to establish that:

a)  Defendants' tipped employees regularly and consistently received sufficient tips to
    allow Defendants to claim the FLSA tip credit, thereby challenging and undermining
    Plaintiff's minimum wage claims;

b)  Defendants' tipped employees regularly and consistently received a sufficient amount
    of commissions to dismiss their overtime pay claims pursuant to the commission
    exemption under section 7(j), FLSA;

c)  Defendants' tipped employees demanded daily cash payments of all tips and
    commissions, thereby barring them from asserting wage claims against Defendants
    under the *in pari delicto* equitable defense set forth in *Jackson v. Egira, LLC* , Case
    No.1:14-cv-03114-RDB, USDC MD (2016); and

d)  the non-tipped employees were at all times paid correct minimum wages, their
    weekly working hours were reported correctly, and did not work overtime hours.

## III.    Denial of Summary Judgment Standard

A court must deny a motion for summary judgment where, as here, the moving party
cannot meet its burden of demonstrating that there is no genuine issue of material fact and that it
is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 247-48 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson,* 477 U.S. at 248.  In making this determination, a court may not decide issues of credibility, must view all the facts and inferences in the light most favorable to the nonmoving party, and must deny summary judgment where conflicting interests may be drawn from the facts.  *Id.,* at 255.

Here, Plaintiff has failed to demonstrate that no genuine issue of material fact exists or that he is entitled to judgment as a matter of law.  Indeed, at a minimum this Court must conclude that disputed issues of material fact exist that preclude summary judgment.

**IV. <u>Undisputed Material Facts Evidencing Existence of Genuine Issues of Material Facts</u>[1]**

**A. <u>Undisputed Material Facts Regarding Minimum Wage Claims</u>**

1. Defendants at all times paid their tipped employees (i.e., servers and bartenders) the required minimum wage base rate ($3.63 to $3.83 per hour), taking into account the tip credit the employer is allowed under the FLSA to equal the applicable minimum wage. Exh. 5, Response to Interrog. No. 2, p. J.R. 0025; Exh. 14 (Fast Eddies Payroll Records), pgs. J.R. 0424-0488.

2. Defendants' tipped employees keep and do not report the cash and credit card tips they receive daily, at their request and behest; this practice by the tipped employees is motivated by their desire not to pay higher income taxes and to avoid having to wait two weeks before receiving their tip income via payroll check. Exh. 5, Response to Interrog. No. 5, p. J.R. 0026; Exh. 9 (Maria Aguilar Deposition), p. J.R. [62-65]; Exh, 12 (Martha

---

[1] All Exhibits referenced in this Opposition Memorandum are Plaintiff's Exhibits accompanying his Motion for Summary Judgment (ECF 38) as numbered in his Exhibit List (ECF 40).

Moscoso Deposition), pgs. J.R. 0182 and 0185-0186); Exh. 16 (Employee Statements),

pgs. J.R. 0599, 0601, 0603, 0609, 0617.

3. Defendants' accountants regularly and correctly calculate and list a standard minimum

amount of tips received by each tipped employee for payroll purposes to establish

Defendants' compliance with the FLSA's and Maryland's tip credit requirements. Exh.

12 (Martha Moscoso Deposition), pgs. J.R. 0182, 0184-0185.

4. Defendants' tipped employees at all times receive weekly tip amounts in cash in excess

of the FLSA minimum wage tip credit minima.  Exh. 16 (Employee Statements), pgs.

J.R. 0601, 0603, 0617, 0629-0630; Exh. 12 (Martha Moscoso Deposition), pgs. J.R.

0187-0188.

5. Defendants' tipped employees earn between $100 to $500 in tips a week. Exh. 16

(Employee Statements), pgs. J.R. 0599, 0601, 0603, 0617, 0629); Exh. 18 (Maria Aguilar

Statements), p. J.R. 0651.

6. Defendants consistently and accurately report the weekly hours worked by their

employees to their accountants for payroll purposes. Exh. 12 (Martha Moscoso

Deposition), pgs. J.R. 0182-0183, 0186.

7. Defendants' employees rarely work more than 40 hours a week because they are

assigned to one of two separate daily shifts.  Exh. 10 (Maria Aguilar 30(B)(6) Deposition,

pgs. J.R. 0121, 0124-0125; Exh. 20 (Sample Fast Eddies Schedule, p. 0673; Exh. 13 (Fast

Eddies Time Cards); Exh. 14 (Fast Eddies Payroll Records).

8. Defendants' tipped employees voluntarily and unilaterally contribute a $10 payment as

a gratuity to the person performing cleaning chores at Fast Eddies. Exh. 10 (Maria

Aguilar 30(B)(6) Deposition), p. J.R. 0121; Exh. 16 (Employee Statements), pgs. J.R. 0599, 0629; Exh. 18 (Maria Aguilar Statements), p. J.R. 0654.

9. Defendants have never assessed or deducted any wages from any of their employees due to patrons walking out of Fast Eddies without paying their tab. Exh. 18 (Maria Aguilar Statements), p. J.R. 0652.

**B.** **Undisputed Material Facts Regarding Overtime Compensation Hours Worked Over 40**

10. Defendants' employees are mostly part-time employees who generally work under 40 hours a week. Exh, 13 (Fast Eddies Timecards); Exh. 18 (Maria Aguilar Statements), p. J.R. 0651.

11. Defendants' servers and bartenders are paid substantial weekly commissions by Defendants for all liquor sales ordered by their patrons. Exh. 16 (Employee Statements), pgs. 0630; Exh. 9 (Maria Aguilar Deposition), p 0094..

12.  The cash commissions paid by Defendants to its tipped employees total $1.00 per drink and $20 per bottle. Exh. 9 (Maria Aguilar Deposition), p. 0092; Exh. 16 (Employee Statements), pgs. J.R. 0601, 0618, 0629.

13. The commissions paid to Defendants' tipped employees amount to $100 a night and $300 to $400 on weekends. Exh. 9 (Maria Aguilar Deposition), p. J.R. 0092; Exh. 16 (Employee Statements), p. 0630.

14. Defendants' bartenders and servers compute and collect their commissions daily. Exh. 9 (Maria Aguilar Deposition), pgs. J.R. 0092-0093; Exh. 16 (Employee Statements), pgs. J.R. 0600

15. Defendants' bartenders and servers compute and collect their tips daily. Exh. 9 (Maria Aguilar Deposition), pgs. J.R. 0092-0093.

16. The tips commissions earned by Defendants' tipped employees are not reported to the accountants at the request and the behest of these employees. Exh. 9 (Maria Aguilar Deposition), p. J.R. 0092-0094.

### C. <u>Undisputed Material Facts Regarding Recordkeeping</u>

17. Defendants' employees clock in and out at the beginning and the end of their shifts. Exh. 10 (Maria Aguilar 30(B)(6) Deposition), pgs. 0126-0127; Exh. 13 (Fast Eddies Timecards); Exh. 16 (Employee Statements), pgs. J.R. 0601, 0606, 0610, 0618.

18. Defendants have kept some records of hours worked and wages paid to their employees. Exh. 13 (Fast Eddies Timecards), pgs. J.R. 0205-0422; Exh. 14 (Fast Eddies Payroll Records), pgs. J.R. 0424-0488.

19. Aguilar has regularly reported the hours shown in the electronic monitor worked by each of her employees to Defendants' payroll accountants. Exh. 10 (Maria Aguilar 30(B)(6) Deposition), pgs. 0126-0128.

### D. <u>Undisputed Material Facts Regarding Absence of "Willfulness" re Alleged FLSA Violations</u>

20. Aguilar is a Spanish-speaking immigrant with a 9th grade education; after arriving in the U.S. in 1986, she worked as a hotel housekeeper, a coffee bartender, and as a waiter. Exh. 9 (Maria Aguilar Deposition), pgs. J.R. 080 and J.R. 082.

21. Aguilar is familiar with the FLSA minimum wage and overtime requirements and has always relied on her accountants to set correct wage and pay rates for payroll purposes.

Exh. 9 (Maria Aguilar Deposition), pgs. J.R. 090-091 ;  Exh. 18 (Maria Aguilar Statements), p. J.R. 0652 and 0654.

22. Aguilar and S&G have never been sued prior to this action. Exh. 9 (Maria Aguilar Deposition), p. J.R. 080.

  **E.**  **Undisputed Material Facts Regarding Plaintiff's Computation of Back Wages**

23. In computing back wages for alleged minimum wage violations, Plaintiff did not include tips when computing back wages allegedly owed to employees. Exh. 19 (Claudia Villarreal-Cuevas Declaration), p. 0667

24. Plaintiff did not account for the tips listed in Defendants' payroll records.  Exh. 19 (Claudia Villarreal-Cuevas Declaration), p. 0667

25. Plaintiff's back wage computations do not acknowledge or recognize the daily commissions paid to the tipped employees. Exh. 9 (Maria Aguilar Deposition), pgs. J.R. 0092-0093; Exh. 16 (Employee Statements), pgs. J.R. 0600 and 0630; Exh. 19 (Claudia Villarreal Cuevas Declaration)

26.  In computing back wages for minimum wages allegedly owed to employees in those instances in which Defendants maintained payroll records specific to a particular employee, Plaintiff subtracted the hourly rate actually paid that employee from the federal minimum wage of $7.25 (depriving the Defendants from the tip credit). Exh. 19 (Claudia Villarreal Cuevas Declaration), p. J.R. 0668

27. In computing back wages for minimum wages allegedly owed to employees in those instances in which Defendants maintained partial or incomplete payroll records, Plaintiff assumed the employee had not been paid any part of the full federal minimum wage of

$7.25, and multiplying that amount by an average number of weekly hours worked. Exh.

19 (Claudia Villarreal Cuevas Declaration), pgs. J.R. 0668-0669

28. Plaintiff's overtime back wage computations include back wages allegedly owed to

FLSA exempt executive employees (e.g., salaried kitchen staff Roberto Reyes). Exh. 3,

No. 40, p. J.R. 0017; Exh, 9 (Maria Aguilar Deposition), p. J.R. 0092; Exh. 19 (Claudia

Villarreal Cuevas Declaration), p. J.R. 0670

29. Plaintiff's back wage computations include back wages allegedly owed to individuals

who were employed by third parties and never employed by Defendants (i.e., Nancy and

Tina Doe). Exh, 10 (Maria Aguilar 30(b)(6) Deposition, p. J.R. 0122;  Exh. 19 (Claudia

Villarreal Cuevas Declaration), p. J.R. 0670

**V. <u>Legal Argument</u>**

Plaintiff's Motion must be denied because there are genuine issues of material fact in

dispute as to each of Plaintiff's claims. The undisputed material facts listed in Part IV above

evidence the existence of genuine issues of material facts sufficient to defeat Plaintiff's Motion.

These facts, which are all found in the Exhibits to Plaintiff's Motion, establish that the following

overarching issues are both material and in dispute, and must therefore be decided at trial:

- Did the tipped employees (servers and bartenders) receive sufficient tips to allow
  Defendants the right to claim a tip credit for minimum wage purposes?

- Did the daily employee practice of cashing out and not reporting tips bar the tipped
  employees from asserting back wage claims pursuant to the equitable defense of *in pari*
  *delicto*?

- Did the non-tipped employees (cooks, busboys and dishwashers) receive the correct
  amount of minimum wages?

- Are Plaintiff's back wage computations incorrect and/or unreliable due to Plaintiff's refusal to recognize a tip credit for Defendants?

- Were the hours worked by Defendants' employees reported correctly for payroll purposes?

- Did the tipped employees receive liquor sales commissions to be exempt from overtime pay claims pursuant to section 7(i) of the FLSA?

- Did Defendants engage in "willful" violations of the FLSA?

- Did Defendants violate the recordkeeping requirements of the FLSA?

### 1. **Defendants have complied with FLSA and Maryland minimum wage requirements**

The facts establish that Defendants have paid their employees the correct amount of minimum wages.  This is corroborated by the deposition testimony of Adriana Leon and Martha Moscoso, who are employed by Defendants' accounting firm and have been involved in preparing Defendants' payroll on a regular basis.  They know the FLSA and Maryland minimum wage requirements for tipped and non-tipped employees.  Defendants report the hours worked by their employees regularly to their accounting firm, and the accounting firm generates the payroll checks accordingly.  Ms. Leon and Ms. Moscoso acknowledge that since Defendants do not report the amount of tips earned by each tipped employee, they list the necessary minimum of tips on the payroll stubs based on Defendants' representation that these employees earn an excess of tips beyond the listed minimum.

The employees' own statements also acknowledge the substantial amount of tips they receive each week.  Aguilar also attests to this fact.

Plaintiff erroneously asserts that the absence of employer records regarding tip payments permits Plaintiff to disallow Defendants' right to a tip credit for FLSA minimum wage purposes.  Plaintiff takes the view that Defendants cannot claim the FLSA tip credit due to inadequate record keeping, and therefore, that Defendants cannot meet their burden to merit their right to assert the FLSA tip credit for their tipped employees.

The absence of adequate recordkeeping by an employer, in this instance regarding tip payments, does not bar the employer from presenting documentary and testimonial evidence regarding these payments. See, e.g., *Almendarez v. J.T.T,* 2010 U.S. Dist. LEXIS 57371 (D.Md. June 8, 2010), in which the court, governed by the framework set forth in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680,  692 (1946), allowed testimonial and documentary evidence from the defendant employer, in the absence of employer records required by the FLSA, to decide an unpaid overtime claim.

Inadequate recordkeeping does not signify *ipso facto* that an employer cannot present other evidence regarding FLSA compliance.  Aguilar's testimony, along with the testimony of Defendants' employees, can serve to counter and overcome any evidence of inadequate recordkeeping, as the courts have recognized.  Employers, for example, are allowed to rebut FLSA claims with testimony leading to a "just and reasonable" inference as to hours worked.  See, e,g, *Kuebel v. Black & Decker, Inc.,* 643 F.3d 352 (2d Cir. 2011).  When a jury rejects an FLSA plaintiff's claim of unpaid overtime work on credibility grounds, the absence of records is of no moment, according to *Jarmon v. Vinson Guard Services,* 2012 U.S. App. LEXIS 18384 (11th Cir. 2012).  In *Jarmon,* Plaintiff asserted that he had worked 9 hours on a specific day, bringing his total hours

worked for the week to 56, above the 54 for which he was paid.  Despite the jury's rejection of Plaintiff's assertion,  based on its evaluation of Jarmon's testimony and that of Defendant's corporate representative, the district judge entered a judgment notwithstanding the verdict, finding "[N]o reasonable jury [could] find that there wasn't some overtime that was not paid."  In reversing, the appeals court noted that "Nothing in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) or its progeny requires a jury to accept a plaintiff's version of events when an employer has inadequate records." Because the jury's factual finding led to a legally supportable conclusion that Plaintiff was properly paid, the court vacated the district court's judgment as a matter of law on liability, and remanded for a new trial.

In light of the above, Plaintiff has failed to demonstrate that no genuine issues of material facts exist or that he is entitled to summary judgment as a matter of law.

### 2.  **Defendants' tipped employees are barred from back wage claims based upon the defense of *in pari delicto***

The evidence shows that Defendants' tipped employees have required that their tips be cashed out on a daily basis, instead of allowing for the reporting of these tips through payroll checks.  The reason they cite for this practice is to underreport their true income and because they want their tips on a daily basis, not every two weeks.

In *Jackson v. Egira, LLC,* Case No. 1:14-cv-03114-RDB (USDC DMD), Document 95 (Memorandum Opinion, April 18, 2016), the U.S. District Court for the District of Maryland allowed a restaurant employer to pursue the equitable defense of *in pari delicto* against tipped employees to bar their FLSA minimum wage and overtime claims.  The employer restaurant allegedly compensated its servers only in tips, and the

14

servers requested an off-the-books arrangement to avoid federal and state income taxes.

The court stated that

> For the *in pari delicto* defense to bar recovery under FLSA, the "plaintiff [must] bear[] at least substantially equal responsibility for the violations he seeks to address, and … preclusion of the suit would not substantially interfere with the statute's policy goals." *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1308 (11th Cir. 2013) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 31011 (1985); *Official Comm. Of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d 1145, 1154 (11th Cir. 2006)).  The plaintiff "must be an active, voluntary participant in the unlawful activity that is the subject of the suit.: *Pinter v. Dahl,* 486 U.S. 622, 636 (1988).  (Memorandum Opinion, at pgs. 7-8).

Plaintiff's Motion should be dismissed to enable Defendants to present this equitable defense at trial.

### 3.  <u>Defendants have not violated its FLSA overtime obligations</u>

There is material evidence in the Exhibits presented with Plaintiff's Motion showing that Defendants' employees worked under 40 hours a week based on the fact they are assigned to one of two daytime shifts for less than five (5) days a week.  Similarly, there is material evidence that there were substantial commissions paid to Defendants' bartenders and servers sufficient to bar these employees form asserting overtime claims pursuant to the commission exemption in section 7(i), FLSA.

In light of the above, Plaintiff has failed to demonstrate that no genuine issues of material facts exist as to the overtime claims or that he is entitled to summary judgment as a matter of law on his overtime claims.

### 4.  <u>Defendants Have Complied with the FLSA Recordkeeping Requirements</u>

Plaintiff alleges that Defendants failed to maintain records and violated Section 11 of the Act.  The FLSA provides that every covered employer must "make, keep, and

preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him" and must "preserve [those] records for such periods of time . . . as necessary or appropriate for the enforcement of the provisions" of the Act. 29 U.S.C. § 211(c). According to *Acosta v. At Home Pers. Care Servs. LLC*, No. 1:18-cv-549, p. 31 (E.D. Va. 2019), "[f]ailure to keep such records subjects an employer to injunctive relief or, in the case of willful violations, a statutory fine. See 29 U.S.C. §§ 215(a)(5), 216(a), 217."  In *Acosta,* the Court found that even though the Defendant's "incomplete, internally inconsistent, and difficult-to-access records [did] not satisfy the Act's stringent recordkeeping requirements" this evidence would not support a finding of willfulness or injunctive relief. (*Id*. at 31 - 33 and Ft. Note 28.)

Defendants in the present case have kept some records of their employees' time worked and have produced employee time keeping records and payroll documentation. This evidence disputes Plaintiff's assertion that Defendants in the present case did not maintain any records. Defendants use multiple formats for documenting their employees' working hours. The principal method of documenting the employee time worked is the electronic time keeping system; the second is the payroll registers; and last the payroll paystubs

Each employee logs into the electronic time keeping system upon arrival at work and logs out when ending the work shift. The system documents the employee's name, pay rate, regular hours worked, overtime worked, and dates worked, among other information. Next, Aguilar sends a wage and hour report to be processed for payroll to the accounting firm on a bi-weekly basis. Aguilar has described these recordkeeping

practices in her deposition.  The Payroll Registers contain total information for each employee: including gross pay, total of each type of deduction, taxes, and net pay. Lastly, the paystubs document the individual employee's name, the hours worked, the pay rate, the current gross amount paid, the net amount paid for the year to date, taxes taken out of paycheck, the current net pay, standard amount of tips received, and other information.

Plaintiff erroneously asserts that the absence of employer records regarding tip payments permits Plaintiff to disallow Defendants' right to a tip credit for FLSA minimum wage purposes.  Plaintiff takes the view that Defendants cannot claim the FLSA tip credit due to inadequate record keeping, and therefore, that Defendants cannot meet their burden to merit their right to assert the FLSA tip credit for their tipped employees.

The absence of adequate recordkeeping by an employer does not bar the employer from presenting documentary and testimonial evidence regarding these payments. See, e.g., *Almendarez v. J.T.T,* 2010 U.S. Dist. LEXIS 57371 (D.Md. June 8, 2010), in which the court, governed by the framework set forth in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680,  692 (1946), allowed testimonial and documentary evidence from the defendant employer, in the absence of employer records required by the FLSA, to decide an unpaid overtime claim.

Inadequate recordkeeping does not signify *ipso facto* that an employer cannot present other evidence regarding FLSA compliance.  Aguilar's testimony, along with the testimony of Defendants' employees, can serve to counter and overcome any evidence of inadequate recordkeeping, as the courts have recognized.  Employers, for example, are

17

allowed to rebut FLSA claims with testimony leading to a "just and reasonable" inference as to hours worked.  See, e.g, *Kuebel v. Black & Decker, Inc.,* 643 F.3d 352 (2d Cir. 2011).  When a jury rejects an FLSA plaintiff's claim of unpaid overtime work on credibility grounds, the absence of records is of no moment, according to *Jarmon v. Vinson Guard Services,* 2012 U.S. App. LEXIS 18384 (11th Cir. 2012).  In *Jarmon,* Plaintiff asserted that he had worked 9 hours on a specific day, bringing his total hours worked for the week to 56, above the 54 for which he was paid.  Despite the jury's rejection of Plaintiff's assertion,  based on its evaluation of Jarmon's testimony and that of Defendant's corporate representative, the district judge entered a judgment notwithstanding the verdict, finding "[N]o reasonable jury [could] find that there wasn't some overtime that was not paid."  In reversing, the appeals court noted that "Nothing in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) or its progeny requires a jury to accept a plaintiff's version of events when an employer has inadequate records." Because the jury's factual finding led to a legally supportable conclusion that Plaintiff was properly paid, the court vacated the district court's judgment as a matter of law on liability, and remanded for a new trial.

Therefore, there is a genuine issue of material fact as to whether Defendants violated the FLSA recordkeeping requirements, for which reason Plaintiff's Motion should be dismissed.

### 5.  <u>Defendants did not "willfully" violate the FLSA.</u>

There is no statutory definition of what is a "willful" violation of the FLSA.  In *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988), the U.S. Supreme Court said willfulness is shown if "the employer *knew or showed reckless disregard for* the matter

of whether its conduct was prohibited by statute….”  *Id.* at 133 (emphasis added). The Court even indicated that an employer's actions could be unreasonable while still falling short of recklessness, such that the violation would not be “willful.” *Id.* at 134 n.13.

As to inadequate recordkeeping, in *Acosta v. At Home Pers. Care Servs. LLC*, No. 1:18-cv-549, p. 31 (E.D. Va. 2019),, the Court found that even though the Defendant's “incomplete, internally inconsistent, and difficult-to-access records [did] not satisfy the Act's stringent recordkeeping requirements” this evidence would not support a finding of willfulness ....” (*Id.* at 31 - 33 and Ft. Note 28.)

The FLSA's “willfulness” standard requires Plaintiff to show that the employer was (1) specifically aware of an FLSA overtime problem; (2) as it related to the specific plaintiff(s) in question; (3) at the time of the overtime violations.  See *Souryavong v. Lackawanna County,* 872 F.3d 122 (Third Cir., 2017).  The evidence on the record in our case shows that Aguilar, a Spanish-speaking immigrant with a 9th grade education, relied on her accountants and her own prior employment experience to handle her restaurant's wages and payroll.  Aguilar was not aware she was in any way not complying with the FLSA.  Moreover, Plaintiff has presented no evidence establishing that Aguilar willfully violated the requirements of the FLSA during the investigation period.  Moreover, Aguilar has testified that she had never been investigated before by Plaintiff, nor been the subject of any lawsuits.

In light of the fact that Plaintiff has not met its *Souryayong* burden, a finding of “willfulness” against Defendants is inappropriate, and liability for a third year of FLSA claims should be disallowed.

**6.** **Plaintiff's Computation of Back Wages Allegedly Owed by Defendants Is Erroneous**

Plaintiff's back wage computations are erroneous because they wrongfully fail to take into account the tip credit for tipped employees, the commissions paid to the tipped employees which exempt them from overtime pay claims, the data regarding the hours worked and the existence of two daily shifts, and the existence of exempt employees and nonemployees.

In Claudia Villarreal Cuevas' Declaration (Exh, 19), the Plaintiff's Wage & Hour lead investigator in this FLSA audit, she admits to the following under oath:

- That in computing the back wages allegedly owed by Defendants for alleged minimum wage violations, she did not include tips as tip credits "because [Defendants] admitted they did not monitor or maintain records of the amount of tips received." Exh. 19, at p. J.R. 0667

- That her back wage calculations for alleged minimum wage violations were based on a combination of non-recognition of tip credits, averaging weekly hours worked by other employees with the same job title, assuming that no hourly wages were paid at all if no payroll records existed, etc.  Exh. 19, pgs. J.R. 0667-0669.

- That her back wage calculations for alleged overtime violations followed the same false assumptions and premises, and also based on not recognizing tip credits or commissions, creating or rejecting averages of overtime hours based on other employees, etc.  Exh. 19, pgs. J.R. 0669-0670

These erroneous calculations by Plaintiff total an egregious $366,411.54 in minimum wage back wages, and $47,552.86 in overtime back wages.

### VI.   <u>Conclusion</u>

Given the existence of material facts in dispute regarding the validity of Plaintiff's back wage calculations, the hours worked by each employee, the payment of minimum wages, the payment of tips and commissions, the existence of FLSA-exempt employees, the existence of third party employees, willfulness, compliance with recordkeeping— these are all factual issues that must be resolved at trial.  The Court must therefore dismiss Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

DATE: July 10, 2020

_/s/_ Michael E. Veve_____

Michael E. Veve, Esquire
Lasa. Monroig & Veve, LLP
5029 Backlick Road, Suite A
Annandale, VA 22003
Tel.: (202) 261-3524
Fax.: (202) 261-3514
e-mail: meveve@aol.com

Counsel for Defendants

_/s/_ Manuel Geraldo___ _____

Manuel Geraldo, Esquire
Robinson & Geraldo, PC
1316 Pennsylvania Avenue, S.E.
Washington, DC  20003
Tel: (202) 544-2888
Fax: (202) 547-8342
e-mail: mgeraldo@rglaw.net

Co-counsel for Defendants

## CERTIFICATION

I, Michael E. Veve, hereby do certify that on this 10th day of July, 2020 a correct copy

of the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for  Summary

Judgment was filed with the Clerk of Court using CM/ECF system which will send

notification of such filing to:

> Chervonti Jones, Esquire
> Office of the Regional Solicitor
> U.S. Department of Labor
> 201 12th Street South
> Arlington, VA  22202-5450
> Tel.: 202-693-9373; Fax: 202-693-9392
> e-mail: Jones.Chervonti.J@dol.gov


  /s/ Michael E. Veve____
Michael E. Veve, Esq.