**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

EUGENE SCALIA,
SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF
LABOR,

                Plaintiff,

                v.

SOFIA & GICELLE, INC., *d/b/a Fast
Eddie's, Sports & Billiards, a corporation*,
and
MARIA AGUILAR, *individually, and as
President and owner of the aforementioned
corporation*,

                Defendants.

Civil Action No. TDC-19-0934

**MEMORANDUM OPINION**

The Secretary of Labor and the United States Department of Labor (collectively, "DOL")
have filed this action to enjoin Defendants Sofia & Gicelle, Inc. d/b/a Fast Eddie's, Sports &
Billiards ("Fast Eddie's") and Maria Aguilar, the president and owner of Fast Eddie's, from
violating the recordkeeping, minimum wage, and overtime pay provisions of the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (2018), and for judgment against Defendants for
back wages and liquidated damages due to employees of Defendants pursuant to the FLSA.
Presently pending before the Court are DOL's Motion for Summary Judgment and Defendants'
Cross Motion for Partial Summary Judgment.  The Court held a hearing on both Motions on
December 14, 2020.  For the reasons set forth below, DOL's Motion will be GRANTED IN PART
and DENIED IN PART, and Defendants' Cross Motion will be DENIED.

**BACKGROUND**

As relevant here, the FLSA applies certain minimum wage and overtime pay requirements upon employers whose employees are "engaged in commerce or in the production of goods for commerce," or who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. §§ 206(a), 207(a).  Fast Eddie's is a full-service restaurant, night club, bar, and pool hall located in Suitland, Maryland.  Since at least October 22, 2015, Fast Eddie's has been owned by Sofia & Gicelle, Inc., a Maryland corporation, and Aguilar has been the sole owner and president of the company and the manager of the day-to-day operations of Fast Eddie's.  The parties do not dispute that since October 22, 2015, Fast Eddie's has been an "enterprise engaged in commerce" as defined in 29 U.S.C. § 203(s)(1), including that it has had employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for" interstate commerce and has had an annual gross volume of sales or business of not less than $500,000.  *Id.*  The parties also do not dispute that both Fast Eddie's and Aguilar are "employers" as defined in 29 U.S.C. § 203(d).  From October 22, 2015 to February 1, 2020 ("the relevant time period"), Fast Eddie's employed bartenders and servers, collectively referred to as "service staff," and cooks and dishwashers, collectively referred to as "kitchen staff."  Compl. ¶ 8(a), ECF No. 1.  DOL has brought this FLSA action for unpaid minimum wages and overtime pay on behalf of 52 current or former Fast Eddie's employees, as listed in the Second Revised Schedule A to the Complaint ("Schedule A").  *See* Joint Record ("J.R") 16-17, ECF Nos. 52-1, 53-1, 54-1, 55-1, 56-1, 57-1, 57-2, 57-3.

**I.     Recordkeeping**

During the relevant time period, Fast Eddie's maintained certain records relating to employees' hours and pay.  Specifically, Defendants retained computerized "Employee Time Card and Job Detail" records ("the Timecard Records") for select time periods from March 2016 through

the end of 2019.  The Timecard Records provide the employees' names, positions, and the times they clocked in and out each day, as well as the total number of hours worked by each employee in a given week and the pay corresponding to those hours.  These records also contain notations for the number of hours worked in a given week beyond the standard 40-hour work week.

The available Timecard Records are very limited.  No Timecard Records are available for the time periods from October 22, 2015 to March 5, 2018 except for limited records for (1) one two-week pay period from March 21, 2016 to April 3, 2016, for which there are only partial entries for a cook and a server, with detailed information for only some of the hours worked during the pay period; and (2) a pay period from January 23, 2017 to February 5, 2017, for which there are only partial records for a cook, three servers, and a dishwasher. Though the Timecard Records from March 2018 through the end of 2019 generally appear to be complete for the identified employees, not all of the personnel on the Fast Eddie's payroll have Timecard Records.  For instance, Anthoni Morales, a cook, appears on the company's payroll from January 2017 to May 2018, but there are no Timecard Records for Morales during this time period.

Defendants also have a running Payroll Check Register covering the time period from May 2016 to February 2020.  These records list, for each paycheck issued, the name of the employee, the date of issue, the gross and actual pay amounts, the number of pay hours, and an entry listing tip amounts for service staff.  For kitchen staff who make only hourly wages, the tip amount entries are empty.

Finally, Defendants possess some reports, for unspecified years, entitled "Employee Sales and Tip Totals by Revenue Center" that reflect sales made by bartenders and servers to customers, listing the numbers of guests and checks, and in some instances referencing the amount and percentage of tips related to those transactions.  They also have limited records from January and

February 2020 listing hours and tip percentages for certain employees.  Aguilar acknowledges, however, that she did not retain any records specifically listing the amounts of tips and commissions received by bartenders and servers.

## II.    Minimum Wages

At Fast Eddie's, wages are paid out differently based on whether the employee is a member of the service staff or the kitchen staff.  Service staff receive a base hourly wage, tips, and commissions for the sale of alcoholic beverages, but they pay back part of their tips as a cleaning fee.  DOL alleges that service staff received less than the federal minimum wage of $7.25 per hour and, in some instances, less than the federal minimum base wage for tipped employees of $2.13 per hour.  According to Defendants' two accountants, Adriana Leon and Martha Moscoso of AM Accounting Services (collectively, "the accountants"), service staff usually received base pay of $3.63 per hour, the minimum base wage for tipped employees in Prince George's County, Maryland, in which Fast Eddie's is located.  Several bartenders and servers have reported an hourly wage of $3.63 per hour, with at least one server reporting that it was $2.75 per hour.  Although some bartenders and servers worked between 30 to 50 hours per week, for the two-week pay periods covered by the paychecks issued from May 6, 2016 to December 23, 2016, service staff consistently received their base hourly wage either for only 20 hours for a full two-week pay period—averaging to 10 hours per week—or for 20 hours per week, even when they actually worked more hours per week.  One service staff employee has reported not being paid any hourly wage for a 25 to 30 hour work week.  As a result, during this time period, the effective hourly wage for many service staff employees, based on actual hours worked, was lower than $3.63 per hour and, in some instances, below the federal minimum wage for tipped employees of $2.13 per

hour.  Moreover, some of the bartenders and servers have asserted that on certain nights, their hourly wages combined with their tips did not add up to the federal minimum wage of $7.25.

According to Aguilar, service staff have been paid a base wage of approximately $3.75 to $3.83 per hour and received their tips, which included cash and credit card tips paid in cash to the employee daily.  Although Aguilar asserts that bartenders and servers earn between $30 and $70 per hour when wages, tips, and commissions on alcoholic beverages are combined, she does not know precisely how much the bartenders and servers make in tips, keeps records of the amount of tips for only one month before discarding them, and thus does not report the amount of tips to the accountants for payroll purposes.  Rather, Aguilar submits to the accountants the number of hours each bartender or server has worked in a given pay period, and the accountant calculates and records the amount in tips that the bartender or server would need to earn in order to meet the federal minimum wage of $7.25.  Finally, at the end of every shift, each bartender or server is required to pay $5.00 to $10.00 from the employee's earned tips back to the restaurant to pay for cleaning of the restaurant by the dishwashers.  According to Aguilar, these payments are voluntary.

As for the non-tipped kitchen staff, DOL alleges that some of these employees received a standard biweekly salary regardless of the number of hours worked, or worked more hours than the number for which they were paid, resulting in an effective hourly wage below the federal minimum wage.  Aguilar asserts that Fast Eddie's has paid kitchen staff the full local minimum wage of between $11.50 to $12.00 an hour.

## III.    Overtime Pay

DOL has alleged that 11 members of Fast Eddie's service staff and kitchen staff worked overtime but were not properly compensated for such work.  Multiple bartenders and servers have reported working over 40 hours per week on at least one occasion without receiving overtime pay.

Based on the Payroll Check Register reflecting that from May until December 2016, Defendants regularly paid service staff for only 20 hours during a two-week pay period, such employees who worked more than 40 hours in a week during that time period did not receive any pay for overtime hours.  At least one server has reported that although he was paid for overtime hours worked, he received only the standard hourly rate, not the overtime premium rate.

According to Defendants, the assigned shifts of Fast Eddie's service staff reflect that those employees do not, in the regular course, work overtime hours and instead typically work only 20 to 35 hours per week.  Fast Eddie's is open seven days a week and operates on a shift schedule, typically with one daytime shift and one nighttime shift.  Aguilar asserts that on Mondays, Tuesdays, and Wednesdays, the bartender daytime shift is from 11:00 a.m. to 5:00 p.m. while the nighttime shift is from 5:00 p.m. to 9:00 p.m.  On occasion, a single bartender works the full 10 hours in a day.  On Thursdays, the nighttime shift runs from 5:00 p.m. to 1:00 a.m.  On Fridays and Saturdays, it runs from 5:00 p.m. to 3:00 a.m., and a second bartender may arrive to work alongside the first during a shift from 10:00 p.m. to 3:00 a.m.  Thus, bartender shifts range from four to ten hours a day.  Most days of the week, bartenders also work as servers.  As for the servers, Aguilar asserts that they typically work Thursdays through Saturdays on a six-hour shift, from 7:00 p.m. to 1:00 a.m.  Nevertheless, Aguilar has acknowledged that employees have worked more than 40 hours in a week at various times, and one service staff member who worked overtime hours has asserted that the posted shift schedules did not reflect the actual number of hours worked because the actual closing time varied and special events sometimes required additional hours.

In addition to wages and tips, service staff are also paid a commission of $1 for each drink and $20 for each bottle of wine or champagne sold.  According to Aguilar, bartenders can make from $300 to $400 in commissions in a night, and commissions can thus exceed the total of wages

and tips received by a service staff member in one night.  Aguilar, however, has not retained records of the payments of commissions.

As for kitchen staff, DOL Investigator Claudia Villarreal-Cuevas has asserted that, based on her interviews of employees, kitchen staff were paid a biweekly amount regardless of the number of hours worked, such that any hours over 40 per week were not compensated at the overtime rate.  Multiple cooks have stated in declarations that when they worked more than 40 hours per week they did not receive any pay for the overtime hours.  According to Aguilar, however, typical shifts for cooks run for five to six hours on weekdays, from 11:00 a.m. to 5:00 p.m. or from 5:00 p.m. to 10:00 p.m., and for seven to nine hours on weekends.  Dishwashers typically work a shift of eight to nine hours and only on Fridays and Saturdays.

## IV.    Specific Employees

In Defendants' Cross Motion for Summary Judgment, Defendants seek judgment in their favor on claims relating to three specific individuals who worked at Fast Eddie's.  First, Defendants argue that Roberto Reyes, the husband of Aguilar and the Chef and Kitchen Manager at Fast Eddie's, works in an executive capacity and is therefore not subject to the pay requirements of the FLSA.  Since 2015, Reyes has been paid $1,500 every two-week pay period.  Reyes's work schedule shows 12-hour shifts on Monday through Thursday and five-hour shifts on Friday and Saturday, for a total of 58 hours of work in a week.  According to Reyes, Aguilar has delegated to him the authority to manage the kitchen and cooking operations at Fast Eddie's, including supervising and managing the work of all the cooks and dishwashers.  These responsibilities include hiring, supervising, disciplining, and firing the kitchen staff, performing inventories of supplies, preparing the menu, and cooking.  Aguilar has also stated that Reyes's duties include cooking, ordering products, and conducting inventory for the kitchen, and that he has the authority

to hire kitchen employees.  Fast Eddie's typically has two to three cooks on staff in addition to Reyes, with one or two cooks reporting to each shift at a given time.  During busy shifts each week, Fast Eddie's employs at least one dishwasher who also serves as a busboy.

Second, they argue that two individuals listed by DOL as affected by Defendants' FLSA violations, "Tina Doe" and "Nancy Doe," were not actually employees of Fast Eddie's.  According to Aguilar, they were "event preparers" who worked for a contractor retained by Fast Eddie's to decorate the restaurant for private events up to two days per month over a three-month period. Aguilar Aff. ¶ 10, J.R. Ex. A, ECF No. 57-2.  However, a bartender and server at Fast Eddie's has stated in a declaration that Tina and Nancy were both servers for Fast Eddie's who also worked during special events.  An undated Fast Eddie's schedule lists a server named "Tina" and a server named "Nancy," each with identified shifts assigned to them.  J.R. 673.

## DISCUSSION

In the Motion for Summary Judgment, DOL argues that the record evidence establishes that there are no genuine issues of material fact, and that Defendants willfully violated the recordkeeping, minimum wage, and overtime pay provisions of the FLSA.  DOL therefore seeks judgment as a matter of law on its claims for injunctive relief and for back wages and liquidated damages on behalf of 52 specific employees.

In their Cross Motion for Summary Judgment, Defendants seek partial summary judgment in their favor on the FLSA claims relating to Reyes because they argue that he is an executive employee who is exempt from the FLSA pay requirements.  29 U.S.C. § 213(a)(1).  Defendants also seek summary judgment on the FLSA claims relating to Nancy Doe and Tina Doe because the evidence establishes that they were contractors, not employees, of Fast Eddie's.

## I.      Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motions, the Court must believe the evidence of the non-moving party, view the facts in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248).  A dispute of material fact is "genuine" only if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'"  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II.      DOL's Motion for Summary Judgment

DOL alleges that Defendants violated the recordkeeping, minimum wage, and overtime provisions of the FLSA.  In an FLSA case, employees have the burden to prove that they performed work that was not properly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  When an employer has "kept proper and accurate records the employee may easily discharge [this] burden by securing the production of those records."  *Id.* at 687.  However, when the employer's records are "inaccurate or inadequate," the employee may meet the burden to establish an FLSA violation by proving that the employee "in fact performed work" that was

"improperly compensated" through the presentation of "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Then, the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. Absent such evidence, a court can award damages to the employee, even if based only on approximations. *Id.* at 688.

The Court will thus first address DOL's claim relating to the alleged recordkeeping violations and then apply *Anderson* to the alleged minimum wage and overtime violations.

## A.     Recordkeeping

DOL argues that Defendants have violated the recordkeeping provisions of the FLSA, including by failing accurately to record the actual number of hours worked by each employee, maintaining only partial pay records for certain years and no pay records for certain employees, failing to properly record overtime pay, and failing to maintain records relating to tips received by service staff. Defendants have conceded that Fast Eddie's records of hours worked and wages paid are incomplete for certain time periods and that certain aspects of their wage accounting, such as tip records and work schedules, were not retained.

The FLSA requires that every covered employer "shall make, keep, and preserve . . . records of the persons employed" and of "the wages, hours, and other conditions and practices of employment maintained" by the employer, and "shall preserve such records for such periods of time" required by regulation. 29 U.S.C. § 211(c). Regulations promulgated to enforce this provision specify that employers must "maintain and preserve payroll or other records" for "each employee" to whom the minimum wage and overtime provisions apply. 29 C.F.R. § 516.2(a) (2020). These records must include, among other information, each employee's "[n]ame in full,"

the "[r]egular hourly rate of pay for any workweek in which overtime compensation is due," the "[h]ours worked each workday and total hours worked each workweek," the "[t]otal wages paid each pay period, and a breakdown between the "[t]otal daily or weekly straight-time earnings or wages . . . exclusive of premium overtime compensation" and the "[t]otal premium pay for overtime hours."  29 C.F.R. § 516.2(a)(1), (7)-(9), (11).  These payroll records must be preserved for at least three years.  29 C.F.R. § 516.5(a).  These recordkeeping obligations are "stringent" and "vital in ensuring employer compliance with the [FLSA]."  *U.S. Dep't of Labor v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 277, 287 (4th Cir. 2019).

Even viewed in the light most favorable to Defendants, there is no genuine dispute of material fact that Defendants failed to maintain all records required by the FLSA.  As a starting point, Fast Eddie's has maintained some payroll records, consisting of the Timecard Records and the Payroll Check Register.  The Timecard Records list each employee separately, provide their job title, and record the date and specific time at which the individual clocked in or out.  These records also aggregate the total number of hours worked and the total number of hours that qualify for overtime, as well as the total regular and overtime pay an employee was to receive during a two-week pay period.  The available Timecard Records, however, are notably incomplete.  For the relevant period dating back to October 2015, there are no Timecard Records available for 2015 and only two individual records are available for all of 2016, both for the pay period ending on April 3, 2016, consisting of an apparently complete set of time entries for Joseph Yearwood, a cook, and an incomplete record for an unnamed server.  Similarly, for 2017, the available Timecard Records are limited to two full and two partial records for employees relating to the two-week pay period ending on February 5, 2017.  One of the partial records does not include the name of the employee.  Although there are no Timecard Records for January and February 2018, Defendants

have maintained Timecard Records more consistently for the pay periods from March 2018 through the end of 2019.  Even so, these records do not account for every employee on the payroll, as there are no entries for multiple employees on DOL's Schedule A list of employees allegedly owed back wages, including Anthoni Morales, Kienia Garcia, Ajailai Hall, Shantee Hydee, and Inna Quarterma.

The available Payroll Check Register is more complete than the Timecard Records in that it covers the entirety of 2017, 2018, and 2019.  It remains incomplete as to the relevant period, however, in that it contains no data from October 2015 to the pay period covered by the paychecks issued on May 6, 2016.  More importantly, the Payroll Check Register, which for each paycheck issued lists the date, employee name, gross and net pay, and the number of hours compensated, covers only some of the categories required by the FLSA.  It does not list the total number of hours worked in a day or an individual week but instead provides only the total hours compensated in a two-week pay period.  *See* 29 C.F.R. § 516.2(a)(7).  There is also no information provided on the hourly rate paid or a breakdown between regular pay and overtime pay.  *See id.* § 516.2(a)(8)-(9). Several employees listed in Schedule A for whom Defendants have Timecard Records have no entries in the Payroll Check Register, such as Aranniva Eliezer Asael, Erica Babbitt, Catherine Clark, and Glen Inman.  Thus, even when the Timecard Records and the Payroll Check Register are considered together, they do not provide sufficient records to satisfy the FLSA recordkeeping requirements.

Finally, Aguilar acknowledges that she never retained, for more than a month, records of tips and commissions received by the service staff.  Where Defendants characterize the total compensation of bartenders and servers as including both wages and tips and argue that they satisfy the FLSA minimum wage requirements through such methods of compensation, Defendants' lack

12

of recordkeeping or retention of records for tips also violates the FLSA.  *See* 29 C.F.R. § 516.28 (stating that for tipped employees, employers shall "maintain and preserve payroll or other records" including the "[w]eekly or monthly amount reported by the employee, to the employer, of tips received").

As the available payroll records show clear gaps in information in that they do not cover all pay periods, categories of required information, and employees during the relevant time period, the Court finds that there is no genuine dispute of material fact that Defendants have violated the FLSA's "stringent" recordkeeping obligations.  *Fire & Safety Investigation Consulting*, 915 F.3d at 287.  DOL's Motion will be granted as to the recordkeeping claims.

### B.      Minimum Wages

The FLSA requires an employer to pay each employee a minimum wage for each hour worked.  29 U.S.C. § 206(a).  DOL argues that Defendants paid bartenders and servers at a rate below the minimum wage, and that by paying kitchen staff the same biweekly amount every pay period, they effectively paid them less than the minimum wage based on the number of hours worked.  At all relevant times, the federal minimum wage rate was $7.25 per hour.  28 U.S.C. § 206(a)(1)(C).  During the hearing on the Motions, relying on 29 C.F.R. § 778.5, DOL argued for the first time that for non-tipped employees, the failure to pay an employee a state or locality minimum wage that is higher than the federal minimum wage itself violates the FLSA.  The cited regulation, however, does not state that the failure to pay a state or local minimum wage violates the FLSA.  Rather, it states in relevant part:

> Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to any employee by virtue of [state or local] legislation, the regular rate of the employee, as that term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words, "regular rate at which he is employed" as used in section 7 must be construed to mean the regular rate at which he is lawfully employed.

13

29 C.F.R. § 778.5.  Notably, this provision appears in Part 778 of Title 29 of the Code of Federal Regulations, which specifically relates to "Overtime Compensation" and contains the following statement limiting its applicability:  "This part contains the Department of Labor's general interpretations with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the Fair Labor Standards Act of 1938."  29 C.F.R. 778.1(a).  Moreover, the regulation's language explicitly refers to the "regular rate" of an employee, a term used only in 29 U.S.C. § 207, the section of the FLSA regulating overtime pay, not § 206, the provision governing minimum wage.  29 C.F.R. § 778.5.  Where DOL has not provided any other basis for finding that a violation of a state minimum wage law is a violation of the FLSA enforceable by DOL, the Court concludes that section 778.5 does not provide such authority and will address the minimum wage claims only as to the federal minimum wage rate of $7.25.  *See McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 275–76 (D. Md. 2014) (distinguishing between the requirements of the FLSA and Maryland wage laws), *aff'd*, 825 F.3d 235 (4th Cir. 2016).

### 1.     Service Staff

Fast Eddie's bartenders and servers received tips as part of their compensation.  For tipped employees, an employer may satisfy the federal minimum wage requirement by paying a lower minimum wage rate and adding the amount of tips earned by the employee to total the requisite $7.25 per hour.  *See* 29 U.S.C. § 203(m)(2).  Under federal law, when using this tip credit provision, an employer must pay a tipped employee at least $2.13 per hour as a base wage.  29 C.F.R. 531.50(a).  Maryland law provides for a higher minimum base wage for tipped employees of no less than $3.63 per hour.  Md. Code Ann., Lab. & Empl. § 3-419(c) (LexisNexis 2016).

a.      **Hourly Wage**

Both Aguilar and the accountants acknowledge that the service staff employees were paid a minimum base wage that was under $7.25 per hour, specifically $3.63 for servers and no more than $3.83 an hour for bartenders during the relevant time period.  These figures would comply with both the federal and Maryland minimum base wage rates for tipped employees.  Several bartenders and servers, however, have asserted in their declarations that they were paid even less than the federal minimum wage for tipped employees because they were regularly paid a base wage either for only 20 hours each two-week pay period, or for 20 hours each week, rather than for all hours actually worked.  For example, one server reported routinely receiving pay for only 20 hours per two-week pay period, for a total of $57.99 per paycheck, despite working on average 30 to 32 hours per week.  A bartender has reported working approximately 50 hours per week but being paid for only 20 hours per week.  Two other bartenders have likewise stated in declarations that they were consistently paid for only 20 hours of work per week despite working more hours each week.  Relatedly, one server has stated in a declaration that during the first week of work at Fast Eddie's, the employee was not paid any base wage and was not allowed to keep tips.

Plaintiffs have thus provided evidence that certain service staff members were not paid even the federal minimum wage for tipped employees of $2.13 per hour.  First, multiple service staff have stated in their declarations that they were paid for only 20 hours per week or pay period despite working more hours. Second, DOL has asserted that, based on the actual hours worked as reported by those service staff listed in Schedule A who were employed during 2016, these individuals effectively received between $0.40 and $4.36 per hour in a base hourly wage.  This assertion is supported by the submitted declarations that certain service staff worked 30 to 50 hours per week rather than the 20 hours per pay period, or 10 hours per week, for which they were paid

an hourly wage.  Based on such figures, these bartenders and servers were effectively paid between $0.73 and $1.21 per hour, less than the federal minimum wage for tipped workers of $2.13 per hour.

Although Aguilar has stated that she had a system for tracking the number of hours worked by each employee and reported those figures to the accountants for entry into payroll records, for the period from October 2015 to May 6, 2016, Defendants have neither Timecard Records nor a Payroll Check Register covering any of the employees on DOL's Schedule A.  Because Defendants have provided no evidence to refute Plaintiffs' testimonial evidence on the number of hours worked during this time period, Defendants have not established a genuine dispute of material fact on the issues of whether service staff were paid for only 10 to 20 hours per week during this time period and whether some therefore received less than the federal minimum hourly wage for tipped workers.  *See Marroquin v. Canales*, 505 F. Supp. 2d 283, 298 (D. Md. 2007) (granting plaintiff's motion for summary judgment regarding unpaid hours of work under the FLSA where there was a lack of documentary evidence to refute the employee's claims of hours worked).

From May 2016 to the end of that year, the asserted practice of paying a base hourly wage for only 20 hours per two-week pay period, which equates to 10 hours per week, is corroborated by the Payroll Check Register, as the vast majority of entries for tipped employees throughout the year reflect only 20 hours of work per pay period compensated at $3.63 per pay period, without any variation in the total wages paid.  At the same time, these entries provide some evidence that the service staff actually worked only 10 hours per week, as Aguilar has generally stated that she tracked and reported the amount of hours worked to the accountants.  However, there are no actual Timecard Records showing the hours actually clocked in 2016, and Defendants acknowledge that bartenders and servers worked on average 20 to 35 hours per week, translating to 40 to 70 hours

16

per pay period.  Further, Aguilar's own accounts of the weekly shifts of a bartender or server would almost never result in a total of exactly 20 hours of work per pay period, and Aguilar has not actually disputed Plaintiffs' assertions that there was a policy that these employees received a flat base wage representing only 20 hours of work per pay period, or that some actually worked between 30 and 50 hours per week during that time period.  Under these circumstances, even viewing the evidence in the light most favorable to Defendants, the Court finds that Defendants have presented insufficient evidence to create a genuine dispute of material fact on Plaintiffs' evidence that throughout 2016, these service staff employees actually worked more than the recorded 20 hours per pay period, and that some therefore received less than the federal minimum wage for tipped employees of $2.13 per hour.

As for the years following 2016, the Payroll Check Register shows that the recorded hours for service staff often varied by employee and by pay period, and that they frequently exceeded 20 hours per pay period.  For example, for pay periods from April 2017 to October 2018, bartender Glenda Lopez and bar manager Jose Hernandez, were, with a few exceptions, consistently paid for 60 hours of work each pay period.  During this time period, server Camari Berri was paid for approximately 44 hours per pay period.  When the hourly pay rate is calculated by dividing the listed number of hours worked by the gross pay as reflected in the Payroll Check Register, the hourly wage for bartenders and servers was consistently $3.63 an hour.  Thus, for this time period, the Payroll Check Register contradicts the claim that service staff were paid for only 20 hours per pay period and creates a genuine dispute of material fact on this issue, and by extension, on whether any service staff members received less than the $2.13 per hour federal minimum wage for tipped employees.  *See Jackson v. Egira, LLC*, No. RDB-14-cv-3114, 2016 WL 1558136, at *7 (D. Md. Apr. 18, 2016) (finding that the defendants provided sufficient evidence to raise a genuine issue

of material fact regarding unpaid hourly wages and overtime pay where the defendant's evidence, if true, would "call[] into question the veracity of Plaintiffs' asserted hours").

###### b.    Tips

Regardless of whether Defendants paid all service staff the required minimum hourly wage of $2.13 per hour, Aguilar and the accountants have stated that the bartenders and servers received a base hourly wage of between $3.63 and $3.83 per hour, so there is no dispute that Fast Eddie's paid all service staff an hourly rate of less than the general federal minimum wage of $7.25.  Thus, for those bartender and servers paid more than $2.13 per hour during and before 2016, and for all service staff for the time period from 2017 forward, the remaining question is whether Defendants complied with the FLSA minimum wage requirement based on the "tip credit" provision of the FLSA by permitting the bartenders and servers to keep their tips such that their total pay exceeded $7.25 per hour.  29 U.S.C. § 203(m)(2).

To be eligible for the tip credit under the FLSA, an employer must have:  (1) paid employees at least $2.13 per hour as base pay; (2) informed the relevant employees that the tip credit was being claimed; and (3) allowed the employees to retain all tips that they received.  *Id.*; *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680–81 (D. Md. 2012).  These latter two requirements are "strictly construed."  *Dorsey*, 888 F. Supp. 2d at 681.  Here, Aguilar has asserted, and bartenders and servers have confirmed, that they were generally permitted to keep their tips, paid in cash at the end of the shift.  Some service staff members have acknowledged that they received tip amounts that would place them above $7.25 in total compensation per hour.  Other service staff members, however, have stated in declarations that they did not always receive tips that added up, with the hourly wage, to $7.25 per hour.

Aguilar has asserted that when hourly wages, tips, and commissions are combined, service staff typically earned between $30 and $70 per hour, with more than half of that amount consisting of commissions.   J.R. 93-94.   But she has not claimed that all service staff always received sufficient tips to meet the minimum wage or that they were paid additional amounts to make up any deficiencies.   Notably, Fast Eddie's has not retained records showing the actual amount of tips received, and Aguilar and the accountants acknowledge that the tip figures listed in the Payroll Check Register are not the actual amounts of tips paid, but figures calculated by the accountants to show the amount of tips that would have to have been earned and received in order to satisfy the local minimum wage requirement of $3.63.   The accountants acknowledge that they never confirmed that the service staff actually received those amounts in tips.   Bartenders and servers have confirmed that while their pay stubs included an entry for tips, these figures did not match the tips actually received each night, as that varied, and the listed tip amount was the same across paychecks.   Thus, for those servers who asserted that they did not receive sufficient tips to provide them with a total of $7.25 per hour, Defendants have not provided evidence that creates a genuine issue of material fact on this point.

As for the remaining service staff for whom there has been no claim that their wages and tips combined to exceed $7.25 per hour, DOL nevertheless argues that they did not receive the minimum wage because they did not retain all of their tips as pay.   Under the FLSA, Defendants cannot qualify for the tip credit unless "all tips received by such [an] employee have been retained by the employee."   29 U.S.C. § 203(m)(2)(A).   Four bartenders and servers have reported in statements and declarations that Fast Eddie's generally required them to pay a $5.00 to $10.00 cleaning fee at the end of each shift, to be given to the dishwashers, using cash earned from tips that day.   Other bartenders and servers have reported that they were required to use their tip money

19

to cover the bills of customers who walked out without paying.  Aguilar has acknowledged that both practices occurred, but she has claimed that the service staff "decided by themselves" to make the cleaning payments and made "their very own decisions" to pay unpaid customer bills.  J.R. 132.

The only explicit exception to the tip credit requirement that "all tips received . . . have been retained by the employee," 29 U.S.C. § 203(m)(2)(A), is when the employees participate in a valid tip pooling arrangement "among employees who customarily and regularly receive tips," an exception which Defendants acknowledged in their interrogatory responses, and defense counsel conceded at the hearing on the Motions, is inapplicable here.  *Id.* § 203(m)(2)(A)(ii).  Although the statute does not specifically provide an exception for voluntary contributions of tips to co-workers, in the DOL Field Operations Handbook, DOL states that "it does not appear that Congress, even in requiring as a general principle that tipped employees retain all their tips, intended to prevent tipped employees from deciding, free from any coercion what[so]ever and outside of any formalized arrangement or as a condition of employment, what to do with their tips, including sharing them with whichever co-workers they please."   Dep't of Labor Field Operations Handbook § 30d04(g), Dep't of Labor (Nov. 17, 2016), https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30d04 ("DOL Handbook"); *see Roussell v. Brinker Int'l, Inc.,* 441 F. App'x 222, 230 (5th Cir. 2011) (affirming a determination based in part on consideration of the DOL Field Operations Handbook's discussion of voluntary contributions of tips to co-workers).  DOL therefore takes the view that "a tipped employee may voluntarily share tips with whichever co-workers the tipped employee chooses."  DOL Handbook § 304d04(g).  Although the number of service staff asserting that they were required to contribute part of their tips as a cleaning fee and to pay for unpaid meals casts serious doubt on Aguilar's lone claim that the

service staff voluntarily gave up their own tips for these purposes, where the Court must view the evidence in the light most favorable to Defendants, Aguilar's specific testimony creates a genuine dispute of material fact whether these payments were voluntary rather than required by management. Therefore, whether Defendants are precluded on this basis from relying on the tip credit to meet the FLSA minimum wage requirements cannot be determined at this stage. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (stating that at summary judgment "[t]he court therefore cannot weigh the evidence or make credibility determinations").

In an effort to avoid any liability relating to the FLSA minimum wage requirement, Defendants invoke the defense of *in pari delicto*, arguing that because the service staff requested that they receive tips in cash on a daily basis, rather than every two weeks, they bear culpability for any FLSA violations and should be barred from recovery. The common law defense of *in pari delicto* may apply when plaintiffs have been involved in the same type of wrongdoing as the defendants, and the plaintiffs bear "at least substantially equal responsibility" for the harm. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307, 310–11 (1985) (finding the defense available in federal securities law cases). A plaintiff "must be an active, voluntary participant in the unlawful activity that is the subject of the suit." *Pinter v. Dahl*, 486 U.S. 622, 636 (1988). Here, however, a request to receive tips in cash on a daily basis does not reflect any voluntary participation in the failure to pay the federal minimum wage. It does not in any way preclude Defendants from ensuring that bartenders and servers retained all of their tips, keeping records of the amounts of tips, ensuring that any server whose tips were insufficient to satisfy the minimum wage requirement received additional wages to meet that requirement, and reporting all wages and tips accurately in payroll records. Indeed, Aguilar has claimed that she kept records of the tips earned by service staff but retained them for only one month before "trashing" them. J.R.

94. Particularly where Aguilar admits that she has "exclusive authority over all personnel matters, including payroll," J.R. 19, any request from service staff to receive tips in cash on a daily basis did not prevent Fast Eddie's from ensuring compliance with the FLSA and cannot be construed as active participation in violations of minimum wage requirements. *See Pinter*, 486 U.S. at 636. The Court therefore finds that the evidence does not support an *in pari delicto* defense that would preclude liability for FLSA minimum wage violations.

In conclusion, the Court will grant summary judgment to DOL on the FLSA minimum wage claims as to (1) service staff who have provided statements that they worked more than 35 hours per pay period, or 18 hours per week, between the October 22, 2015 and December 23, 2016 pay periods; and (2) service staff who have provided statements that they did not receive the minimum wage even with the inclusion of tips received. Although DOL argues that the Court may use declarations from some employees to find minimum wage violations as to other, similarly situated employees, the evidence in this case reflects a distinct lack of uniformity among personnel on issues such as their dates of service, the number of hours worked per week, and the amount of tips received that precludes such broad extrapolations. Thus, under these particular circumstances, the Court will not grant summary judgment in favor of service staff who do not meet the conditions listed above. Rather, the Court will deny summary judgment as to the remaining service staff minimum wage claims, including on the argument that the tip credit is unavailable because the bartenders and servers paid some of their tips to the dishwashers or to cover unpaid meals.

### 2. Kitchen Staff

As for the kitchen staff, consisting of cooks and dishwashers, DOL alleges that they were not paid the minimum wage because such employees were paid a biweekly salary regardless of the hours worked each week, and that such a practice led to an effective hourly rate of less than

the $7.25 federal minimum wage.  In support of this claim, DOL offers a declaration from the DOL investigator who states that she interviewed kitchen staff and was told that they were paid a biweekly salary regardless of the number of hours worked.  DOL asserts, without citation, that Joseph Yearwood, a cook, worked for 204 hours during the pay period ending on May 20, 2016, but he was paid only $500.00, resulting in an hourly wage of $2.45 per hour.  DOL, however, has not provided any declaration from a kitchen staff employee asserting that he or she worked over 200 hours per pay period, or over 100 hours per week.  Instead, the declarations from kitchen staff are consistent with the conclusion that their hourly pay rates were above the federal minimum wage.  For example, one cook, who was a dishwasher when he first started working at Fast Eddie's, received $8.00 per hour when he started but received $11.50 per hour in 2015 and $14.00 per hour in 2016, while working 50 to 60 hours per week.  Another cook reported making $15.00 per hour initially but later received $16.00 per hour.  This cook has also asserted that Fast Eddie's paid only for 40 hours of work per week, even though the cook worked an average of 50 hours per week. However, even if true, because the cook was making $15.00 per hour, the effective pay rate would still be $12.00 per hour, which exceeds the federal minimum wage.  Another cook reported working on average 39 hours per week, and sometimes as many as 60 hours per week, but did not identify an hourly rate of pay.  Declarations submitted by two dishwashers state that each of them was paid an hourly wage of $9.00, and one stated that, in some instances, when the use of the time clock resulted in an inaccurate number of hours, the owner fixed the figures to ensure proper compensation.  Another dishwasher reported making $11.75 an hour and typically worked 28 hours a week. These declarations do not state that the dishwashers worked more hours than the number for which they were compensated.

The available payroll records likewise do not establish DOL's claim that kitchen staff were paid only a flat rate and that they were paid below the minimum wage.  From October 2015 until May 2016, there are no available pay records.  For the time period from May 2016 forward, the Payroll Check Register lists varying numbers of hours worked per pay period, not a uniform number of hours for each pay period, as claimed by DOL.  Moreover, the Payroll Check Register and the available Timecard Records reflect that kitchen staff generally worked less than 80 hours per pay period, or 40 hours per week.  The hours actually listed and total wages actually paid lead to hourly wages for Jose Alvarez, Tracy Morgan, Anthoni Morales, Alberto Rufino, Jimmy Simmons, Paul Wolfe, and Joseph Yearwood ranging from $9.55 to $11.50 per hour, higher than the federal minimum of $7.25.  Where the witness statements and available records do not individually or collectively establish minimum wage violations as to the kitchen staff, the Court will deny summary judgment on these claims.

### C.    Overtime Pay

DOL also seeks summary judgment on the claim that Defendants failed to provide overtime pay to 11 Fast Eddie's employees.  Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employee's "regular rate" is the hourly rate that the employer pays the employee for a normal, 40-hour workweek, but that "fixed amount must be sufficient to provide compensation at a regular rate not less than the minimum hourly rate."  *Flood v. New Hanover Cty.*, 125 F.3d 249, 252 (4th Cir. 1997).  "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee . . .

24

cannot be lower than such applicable minimum." 29 C.F.R. § 778.5.  During the relevant period, the Maryland state minimum wage requirements were $9.25 per hour in 2017, which then increased to $10.10 per hour in July 2018 and to $11.00 per hour in January 2020.  Md. Code Ann., Lab. & Empl. § 3-413(c)(1).

### 1.   Service Staff

DOL has the initial burden to show that the amount and extent of overtime worked by the restaurant's bartenders and servers creates a just and reasonable inference that these employees were not sufficiently compensated for all hours of overtime actually worked.  *Anderson*, 328 U.S. at 687.  Of the 11 employees for whom DOL claims unpaid overtime pay, six worked as service staff:  Camari Berri, Enrique Ferman, James Hudson, D'Ann Johnson, Glenda Lopez, and Mary Parker.  For Lopez, however, DOL's own per-pay-period calculations do not reflect any unpaid overtime.  *Compare* J.R. 490 *with* J.R. 560-565.  Thus, the Court will consider overtime claims only for the other five service staff.

With the exception of Ferman's claim, the service staff overtime claims all relate to time periods in 2016.  Several bartenders and servers stated in their declarations that they worked in excess of 40 hours per week but were not paid for that time either because their biweekly paychecks consistently reflected only 20 hours or less of work each pay period, or because they worked overtime several times but were paid at the same rate as for regular hours.  Although Defendants assert that service staff generally worked between 20 and 35 hours per week, and Aguilar has generally described the timing of work shifts, she has not provided evidence on how many shifts a given bartender or server worked in a week.  More importantly, she has not disputed that some employees worked more than 40 hours per week on occasion, or that the service staff for whom DOL asserts overtime pay claims actually worked overtime.

For the periods prior to May 2016, there are no records reflecting the hours worked by these employees.  As for the overtime claims of Berri, Hudson, Johnson, and Parker relating to pay periods between May and December 2016, the Payroll Check Register reflects that with the exception of six out of over 35 paychecks from May until December 2016, these four individuals were consistently paid for only 20 hours each pay period, or 10 hours per week.  As discussed above, Defendants have not provided sufficient evidence to establish that these calculations accurately reflected the actual hours worked.  *See supra* part II.B.1.a.  Thus, the Court finds that Defendants have not provided sufficient evidence to create a genuine dispute of material fact that there were FLSA overtime pay violations relating to Berri, Hudson, Johnson, and Parker.  *See Marroquin*, 505 F. Supp. 2d at 298.

As for Ferman, whose overtime claim relates to pay periods between April 2018 and February 2020, available Timecard Records reflect at least 13 weeks during which Ferman worked over 40 hours.  The actual pay associated with these work weeks, as reflected on the Payroll Check Register, reveals an hourly rate of $3.63 with no overtime premium for hours beyond 40 hours in a week, or does not account for all of the overtime hours reflected in the Timecard Records. Defendants have not provided any evidence refuting the Timecard Record entries showing that Ferman worked overtime hours or establishing that Ferman was properly paid for the overtime worked.  Therefore, the Court finds no genuine dispute of material fact on the question of whether Ferman worked overtime hours but did not receive proper overtime compensation as required by the FLSA.

Finally, Defendants argue that regardless of the specific evidence on specific employees, they have complied with the FLSA's overtime pay requirements because bartenders and servers make sufficient commissions from the sale of drinks and bottles of champagne or wine to qualify

26

for an exemption from overtime pay which applies if: (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable under 29 U.S.C. § 206, and (2) more than half of the employee's compensation is composed of commissions received for goods or services. 29 U.S.C. § 207(i). Although Aguilar has asserted that bartenders and servers receive more in commissions each night than their hourly pay and tips combined, which would satisfy the second element of the commission exemption, Aguilar's deposition testimony and the payroll records establish that bartenders and servers were paid at most a regular hourly wage of $3.63 to $3.83 per hour, less than one and one-half times the applicable regular rate under § 206, which is the federal minimum wage of $7.25 per hour. So even if the bartenders and servers made commissions, however substantial, because their regular rate of pay does not rise to the level required for the exemption to apply, Defendants cannot rely upon on it to satisfy the overtime pay requirement.

In summary, because Defendants have not presented sufficient evidence to create a genuine dispute of material fact on the specific overtime claims of Berri, Hudson, Johnson, Parker, and Ferman, the Court will grant summary judgment on these claims.

### 2.     Kitchen Staff

Of the 11 employees for whom DOL claims unpaid overtime wages, five worked as kitchen staff: Joseph Yearwood, Paul Wolfe, Kienia Garcia, Jose Alvarez, and Roberto Reyes. DOL has provided evidence that certain kitchen staff members worked overtime but were not compensated properly. For example, one cook provided an employee schedule that showed 12-hour shifts for Monday through Thursday and five-hour shifts on Friday and Saturday, for a total of 58 hours of work in a week. Based on this schedule, this cook worked approximately 18 hours of overtime each week, but the employee's statement expressed uncertainty whether he received overtime pay.

27

Another cook has reported working on average a 50-hour work week but receiving pay for only 40 hours per week and thus did not receive overtime pay.  Another kitchen staff member claims to have worked up to 60 hours a week without overtime pay and was told by Aguilar that Fast Eddie's did not pay overtime.  Aguilar has acknowledged that certain employees worked more than 40 hours per week at times, and she has not directly contradicted the specific overtime claims by the kitchen staff.

For Yearwood, DOL claims that he is owed 62 hours of unpaid overtime every week from October 15, 2015 until the week of October 2, 2016.  However, there is there no evidence, such as an employee declaration, establishing that Yearwood worked 102 hours per week.  For Wolfe, DOL claims that he worked 16 hours of overtime every week from October 22, 2015 until the week ending January 22, 2017.  There is evidence that Yearwood worked 50 hours per week and that Wolfe worked up to 60 hours per week during these time periods.  Because Aguilar does not contradict these claims, and for the periods before May 6, 2016 there are no available payroll records that could arguably refute these claims, the Court will grant the Motion as to these overtime claims up to May 2016.

For the periods after May 6, 2016, however, although there are no complete Timecard Records for either individual during these months, the Payroll Check Register shows that Yearwood worked varying numbers of hours each pay period, ranging from 8 to 70 hours per two-week pay period, and that Wolfe worked varying numbers of hours ranging from 32 to 80 hours per pay period.  Thus, unlike for the service staff, for whom the Payroll Check Register confirmed that they received a flat rate of pay for 20 hours per period across the board, the Payroll Check Register contradicts DOL's broad claim that kitchen staff were paid a fixed, biweekly payment

28

regardless of the number of hours worked.  The Payroll Check Register thus provides evidence that contradicts these overtime pay claims for periods after May 6, 2016.

As to Garcia, DOL claims that over three weeks in October 2017, Garcia worked nine hours of overtime each week without receiving overtime pay.  However, there are no payroll records for this employee for the month of October 2017, and there is no testimonial or documentary evidence establishing that Garcia worked these overtime hours.

As for Alvarez, DOL claims that he is owed overtime pay for two weeks in June 2019 when he worked 61 and 48 hours, respectively.  This claim is supported by Alvarez's Timecard Records for those weeks.  Notably, the Payroll Check Register shows that he did not receive overtime pay for these hours worked.  Where Defendants have provided no evidence to refute the accuracy of the Timecard Records' reporting of the hours worked, the Court will grant DOL's Motion on this claim.

According to the Payroll Check Register, the fifth kitchen staff employee, Reyes, is consistently paid $1,500 each pay period.  Employee statements and sample work schedules demonstrate that Reyes worked on average 50 to 60 hours.  Aguilar acknowledges that Reyes regularly worked, on average, 40 to 55 hours per week.  As discussed below, however, there is a genuine issue of material fact whether Reyes was a supervisor who is exempt from the FLSA overtime pay requirements.  *See infra* part III.A.  Therefore, the Court cannot grant the Motion as to Reyes at this time.

In summary, the Court will grant the DOL's Motion as to (1) the overtime pay claims relating to Yearwood and Wolfe for the time period before May 6, 2016, based on the amounts of hours supported by witness statements; and (2) the overtime pay claim relating to Alvarez.  The Court will deny the Motion as to the remaining kitchen staff overtime claims.

###### D.     Willfulness

DOL argues that the evidence establishes that Defendants' FLSA violations were willful. Under the FLSA, the statute of limitations for FLSA minimum wage and overtime violations is two years unless it can be shown that the violations were "willful," in which case the statute of limitations is three years.  29 U.S.C. § 255(a).  The issue of willfulness is typically a question of fact, and the burden of proof is on the plaintiff.  *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015).  A "willful violation" exists when "[t]he employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  An employer recklessly disregards the FLSA's requirements "if the employer should have inquired further into whether its conduct was in compliance . . . and failed to make adequate further inquiry."  29 C.F.R. § 578.3(c)(3).  However, a "good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects" is not a willful violation.  *McLaughlin*, 486 U.S. at 135.  Thus, negligence or unreasonableness does not establish willfulness without evidence of recklessness.  *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011); *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 151 (D. Md. 2019).

Here, the parties entered into a tolling agreement, dated October 6, 2017, in which the parties agreed that the statute of limitations would be tolled from that date forward in exchange for DOL not immediately filing a case at that time.  Because DOL is only seeking damages for the period from October 22, 2015 forward, the entire relevant period falls within the general two-year statute of limitations.  29 U.S.C. § 255(a).  At the hearing, the parties identified no other relevance to the question of willfulness.  Accordingly, the Court finds that it need not decide whether there

is any genuine dispute of fact on the issue of willfulness because any such dispute is not material to the resolution of this case.

### E.      Remedies

As discussed above, the Court will grant summary judgment to Plaintiffs on (1) the recordkeeping violations; (2) for the period from October 22, 2015 to December 23, 2016, the minimum wage claims of service staff who have stated in declarations that they worked more than 18 hours per week; (3)  the minimum wage claims of service staff who have stated in declarations that they did not receive sufficient tips to receive more than $7.25 per hour in total compensation; (4) the overtime pay claims of the following service staff members:  Berri, Hudson, Johnson, Parker, and Ferman; and (5) the kitchen staff overtime pay claims relating to Yearwood and Wolfe for the time period before May 6, 2016, based on the amounts of hours supported by the witness statements, and the overtime pay claim relating to Alvarez.  Because in most instances the actual amounts of unpaid minimum wage or overtime pay must be recalculated based on the Court's rulings, and some may be subject to change based on issues for which summary judgment has not been granted, Plaintiffs will be directed to submit calculations consistent with the Court's rulings at trial or after resolution of all remaining claims.  *See Acosta v. Mezcal, Inc.*, No. JKB-17-cv-0931, 2019 WL 2550660, at \*7 (D. Md. June 20, 2019) (finding that although DOL established certain minimum wage and overtime pay violations, summary judgment on back pay could not be granted based on the submitted calculations).

As for Plaintiffs' request for injunctive relief, under the FLSA, this Court may grant injunctive relief "to restrain violations" of any withholding of payment of minimum wages or overtime compensation.  29 U.S.C. § 217.  "A suit for an injunction brought by the [DOL] . . . is essentially equitable in nature . . . in which the trial court has broad discretion to fashion its decree

according to the circumstances of each case." *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 663 (4th Cir. 1969). An injunction is warranted only "where the court is convinced that such relief is necessary to prevent future violations." *Walling v. Clinchfield Coal Corp.*, 159 F.2d 395, 399 (4th Cir. 1946) (citations omitted). Although the Court has granted summary judgment on the claim of recordkeeping violations and certain minimum wage and overtime claims, because certain other claims remain, it will defer ruling on the need for and content of an injunction until the resolution of the issue of liability on all claims.

## III.     Defendants' Cross Motion for Summary Judgment

In their Cross Motion for Summary Judgment, Defendants argue that three individuals who worked at Fast Eddie's are not subject to the requirements of the FLSA. First, they argue that Roberto Reyes is exempt from the FLSA pay requirements because he was an executive employee. Second, they argue that Tina Doe and Nancy Doe are not covered by the FLSA because they were contractors, not employees of Fast Eddie's.

### A.     Roberto Reyes

Defendants argue that Roberto Reyes, who is Aguilar's husband and works at Fast Eddie's Chef and Kitchen Manager, was employed in an executive capacity and is therefore exempt from the minimum wage and overtime pay requirements of the FLSA. These requirements do "not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). In order to qualify as an "employee employed in a bona fide executive capacity," an employee must: (1) have been compensated on a salary basis at a rate of not less than $684 per week; (2) have had, as a primary duty, the "management of the enterprise in which the employee is employed" or of a "customarily recognized department or subdivision thereof"; (3) have "customarily and regularly directed the work of two or more

employees"; and (4) have had "the authority to hire or fire other employees" or be an employee whose "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100. Courts must look beyond the employee's job title and consider the employee's salary and duties to determine whether the exemption applies.  29 C.F.R. § 541.2.

Here, based on Reyes's affidavit and the payroll records, there is no dispute that Reyes regularly received a salary of $1,500 every two weeks, which amounts to a weekly rate that exceeds the compensation requirement for an exempt executive employee.

As to whether Reyes had as a "primary duty" a management role, he has stated in his affidavit that beyond cooking, he is also responsible for "managing all of the kitchen operations" of Fast Eddie's, including "supervising the work of all kitchen employees," "hiring, disciplining and firing the kitchen staff," and performing non-personnel related management duties, such as conducting inventories, purchasing supplies, and preparing the food menu.  In her deposition, Aguilar confirmed that Reyes supervises the kitchen staff and that he specifically supervises the cooks.  On the question of whether Reyes "customarily and regularly directed the work of two or more employees," DOL argues that when Reyes worked, he was generally the only cook on the shift and thus did not actually supervise other cooks.  Aguilar's deposition testimony, however, reflects that on the busy days of the week, there are often two cooks and at least one dishwasher on duty at the same time.  Notably, a work schedule, apparently from 2016, lists Reyes, another cook, and a dishwasher working the same or overlapping shifts on three days that week, and lists two dishwashers working together with two cooks during two shifts that week, one of which was Reyes.  Even focusing only on cooks, the schedule lists three other cooks on staff along with Reyes. During the relevant time period, Fast Eddie's employed a total of seven different individuals as

cooks, not including Reyes, and Aguilar has stated that Fast Eddie's generally employed two cooks other than Reyes in any given time period.  Where the language of the regulation requires only that an executive employee regularly direct the work of two or more other employees, without specifying that it must occur at the same time, the Court finds that Defendants have provided sufficient evidence to meet this requirement.  *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 513-14 (4th Cir. 2011) (holding that an employee "customarily and regularly" directs the work of two or more employees if, in aggregate, the "subordinates work 80 hours or more per week," and the supervision is "greater than occasional" but "may be less than constant," without identifying a requirement of simultaneous supervision).

On the question whether Reyes has had the authority to hire or fire kitchen staff, Reyes stated in his affidavit that he has such authority.  Aguilar has likewise testified in her deposition that Reyes has hiring authority and did not claim that Reyes lacked firing authority; rather, she stated only that Fast Eddie's has not fired anyone.  Although Aguilar has stated that any hiring decision would require her approval, her testimony is consistent with the conclusion that, at a minimum, Reyes had significant input in those decisions.  Defendants' evidence is thus sufficient to demonstrate that Reyes either had the authority to "hire or fire" kitchen personnel or that his "suggestions and recommendations" relating to kitchen staff personnel decisions are given "particular weight."  *See* 29 C.F.R. § 541.100(a)(4).

Notably, DOL has provided no evidence from kitchen staff personnel contradicting the statements of Reyes and Aguilar.  The record, however, reveals inconsistencies in the accounts provided by Reyes and Aguilar.  In a 2016 statement, Reyes characterized his role at Fast Eddie's as that of a cook and described his duties with no mention of any supervisory function.  Elsewhere in her deposition, when asked whether Reyes regularly directs the work of other employees,

Aguilar stated, "Well, everyone knows what to do.  We just change shifts, but everyone knows."  J.R. 124.   At another point, Aguilar stated that she is solely responsible for setting pay rates and work schedules and responded to the question of who supervises the dishwashers by stating, "I'm always there."  J.R. 121.  Where the general claims of a supervisory function are inconsistent with other statements in the record, and the evidence must be viewed in the light most favorable to the non-moving party, the Court finds that there remains a genuine issue of material fact relating to whether Reyes has "customarily and regularly directed the work of two or more employees."  29 C.F.R. § 541.100.  The Court will therefore deny Defendants' Cross Motion on the issue of whether Reyes is an exempt executive employee.

### B.    Nancy Doe and Tina Doe

In their Cross Motion, Defendants also assert, based on testimony from Aguilar, that neither "Nancy Doe" nor "Tina Doe," identified by DOL as employees who were not paid the minimum wage as required by the FLSA, were ever employees of Fast Eddie's but instead worked for an independent contractor, Marco Solara, who was retained once or twice a month to decorate the restaurant for private parties.  They claim that the only payments these individuals received from Fast Eddie's were liquor sales commissions.  The Court finds, however, that there is a genuine dispute of material fact whether these two individuals were employees.  A Fast Eddie's employee who worked as both a bartender and server has stated in a declaration that there was an individual named Tina who regularly worked as a server one day per week for about six hours, and that she also worked special events approximately four days per month.  The same employee has stated that there was another individual named Nancy who worked as a server at the Maryland location of Fast Eddie's, and that Nancy worked six-hour shifts during events, which occurred approximately three times per week.  Although the declaration is unclear whether Nancy's work

35

as a server was separate from her work during events, a 2016 Fast Eddie's work schedule lists Tina and Nancy among the roster of servers and reflects that they were assigned multiple shifts that week, without any reference to special events or any sign that they were contractors rather than employees.  Viewing the evidence in the light most favorable to the non-moving party, the Court finds sufficient evidence to create a genuine dispute of material fact whether Nancy Doe and Tina Doe were employed by Fast Eddie's as servers.  Therefore, Defendants' Cross Motion will be denied as to these two individuals.

## CONCLUSION

For the foregoing reasons, DOL's Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.  The Motion will be granted on (1) the recordkeeping violations; (2) for the period from October 22, 2015 to December 23, 2016, the minimum wage claims of service staff who have provided statements that they worked more than 18 hours per week; (3) the minimum wage claims of service staff who have provided statements that they did not receive sufficient tips to receive more than $7.25 per hour in total compensation; (4) the service staff overtime pay claims relating to Berri, Hudson, Johnson, Parker, and Ferman; and (5) the kitchen staff overtime pay claims relating to Yearwood and Wolfe for the time period before May 6, 2016, based on the amounts of hours supported by witness statements, and the overtime claim relating to Alvarez. The Motion will be otherwise denied.  Defendants' Cross Motion for Partial Summary Judgment will be DENIED.  A separate Order shall issue.


Date:  December 30, 2020                              /s/ *Theodore D. Chuang*
                                                     THEODORE D. CHUANG
                                                     United States District Judge

36